IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD EUGENE SMITH,           )
                                )
            Plaintiff,          )
                                )
       v.                       )     1:22CV16
                                )
KILOLO KIJAKAZI,                )
Acting Commissioner of Social Security, )
                                )
            Defendant.          )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Richard Eugene Smith ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI on October 30, 2019, alleging a disability onset date of January 1, 2019. (Tr. at 16, 287-93)[1] His application was denied initially (Tr. at 153-74, 201-05) and upon reconsideration (Tr. at 175-93, 212-21). Thereafter, Plaintiff's requested an administrative hearing de novo before an Administrative Law Judge

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

("ALJ"). (Tr. at 222.) On February 18, 2021, Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent telephonic hearing. (Tr. at 16.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 29), and, on November 15, 2021, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).2

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

2 "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.3 Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

3 "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date of August 26, 2014. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 19.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the cervical spine; degenerative changes [of] the fifth PIP joint with small avulsion fracture; diabetes with neuropathy; COPD[,] status post brush fire burn to the right upper extremity [and] right flank; anxiety; and depression[.]

(Tr. at 19.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19-21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform medium work with further limitations. Specifically, the ALJ found that

> [Plaintiff can] sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching with the right upper extremity; frequent handling and fingering; must

5

avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust and gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; low stress work, defined as only occasional decision-making and only occasional changes in the work setting; occasional interaction with coworkers and supervisors; and aside from incidental contact, can have no interaction with the public.

(Tr. at 21.)

The ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 27.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform jobs available in substantial numbers in the national economy and therefore was not disabled. (Tr. at 28-29.)

Plaintiff now contends that substantial evidence fails to support the ALJ's RFC assessment. Specifically, Plaintiff argues (1) that the ALJ erred in finding that Plaintiff's activities of daily living were inconsistent with his allegations regarding pain and other symptoms, and (2) that overall, the ALJ failed to "provide a logical bridge linking the evidence in the record to his conclusions" (Pl.'s Br. [Doc. #13] at 6, 12).

Plaintiff first challenges the ALJ's reliance on Plaintiff's activities of daily living as evidence that he could perform work at the medium exertional level. In particular, the ALJ relied on Plaintiff's purported ability to clear and burn brush, which the ALJ characterized as "heavy yard work." (See Tr. at 22, 24, 25, 27.) As Plaintiff correctly notes, the record indicates that he cleared brush only once, on September 27, 2019, more than a month before his application date for SSI. (Pl.'s Br. at 13-14) (citing Tr. at 93-94, 766, 867). Plaintiff further testified that he was "helping out" a friend on that occasion, that he was near to some brush

6

and hit a gas can and it exploded or ignited causing burns to Plaintiff's right arm, shoulder, and abdomen. (See Tr. at 93-94.) The medical records reflect that Plaintiff was "trying to start a brush fire to clear some brush on his property with some gasoline" and the fire flared up and burned his right arm and chest. (Tr. at 755, 875.) Most crucially, the ALJ acknowledged that, while burning brush in September 2019, Plaintiff received injuries severe enough to impact his RFC. Specifically, the ALJ included "status post brush fire burn to the right upper extremity [and] right flank" among Plaintiff's severe impairments at step two of the sequential analysis. (Tr. at 19.) Despite finding that Plaintiff's burns restricted his ability to perform basic work tasks, the ALJ relied on Plaintiff's apparently unsuccessful attempt to burn brush prior to the relevant period as a basis to find that he could perform "heavy yard work." (Tr. at 26-27.)

Defendant concedes that the ALJ mischaracterized Plaintiff's burning brush as being during the relevant period, but she argues that "the ALJ did not solely rely on this one activity when finding Plaintiff not disabled within the meaning of the Act." (Def.'s Br. [Doc. #15] at 25.) Therefore, she contends that "remand would be futile." (Id.) While a finding of futility might be appropriate where an ALJ made a scrivener's error or misstated one activity in a laundry-list of others, the ALJ in this case primarily, and repeatedly, relied on Plaintiff's ability to perform heavy yard work as a basis for his RFC findings. Specifically, when summarizing the medical evidence, the ALJ related that,

> in September 2019, [Plaintiff] required emergent treatment for second-degree burns to the right side of his body, which he sustained while trying to clear brush on his property. This activity is not consistent with the degree of neck and back pain alleged by [Plaintiff].

7

(Tr. at 22.) The ALJ then referenced Plaintiff's ability to perform heavy yard work <u>three additional times</u> to support his conclusion that Plaintiff was capable of medium work. These passages read as follows:

- Plaintiff's "daily activities, which include household chores and somewhat heavy outside work, such as clearing brush, are not inconsistent with the ability to perform work at the medium level." (Tr. at 24.)

- [Plaintiff's] "high-functioning activities of daily living, which include household chores and heavy yard work, suggest the ability to perform work at the medium exertional level." (Tr. at 25.)

- And "[f]inally, [Plaintiff's] activities of daily living, which included the ability to clear brush with fire during the relevant period, are not inconsistent with the residual functional capacity for a reduced range of unskilled, medium-level work as assessed herein." (Tr. at 27.)

Overall, the ALJ used Plaintiff's alleged ability to perform heavy yard work both to discount the impact of his impairments on his ability to perform basic work activities and to discount the credibility of Plaintiff's allegations generally. Therefore, the ALJ's treatment of Plaintiff's activities played a pivotal role in his RFC assessment.

Plaintiff acknowledges that the ALJ was entitled to consider Plaintiff's daily activities when evaluating his symptoms and their impact on his functioning. However, In <u>Woods v. Berryhill</u>, the Fourth Circuit explained that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." <u>Woods v. Berryhill</u>, 888 F.3d 686, 694 (4th Cir. 2018); <u>see also</u> <u>Lewis v. Berryhill</u>, 858 F.3d 858, 868, n.3 (4th Cir. 2017) ("The ALJ points to Lewis' ability to perform incremental activities interrupted by periods of rest, such as 'driv[ing] short distances of up to 30 miles, shop for groceries with the assistance of her mother or roommate, handle her finances, and

8

watch television.' The ALJ's conclusion that Lewis' activities demonstrate she is capable of work is unsupported by the record.") (citation omitted); Brown v. Comm'r, 873 F.3d 251, 263 (4th Cir. 2017) ("[T]he ALJ noted that Brown testified to daily activities of living that included 'cooking, driving, doing laundry, collecting coins, attending church and shopping.' The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday."); see also Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 at *5-8 (M.D.N.C. Jul. 23, 2015).

Here, the ALJ cites no evidence that Plaintiff could perform heavy yard work at all during the relevant time period, particularly after receiving burns which caused further limitation and also injuring his right shoulder and mid-back in a March 2020 fall. (See Tr. at 23.) The ALJ purports to account for Plaintiff's additional injuries by limiting him to "frequent forward, lateral, and overhead reaching with the right upper extremity." (Tr. at 25.) However, much of the evidence the ALJ relies upon for the RFC assessment predates Plaintiff's shoulder injury and, in at least one instance, his burn injuries as well. (See Tr. at 27.) Perhaps most notably, the prior April 2019 administrative decision limited Plaintiff to occasional overhead reaching in addition to light exertional level work. (Tr. at 27.) The ALJ fails to properly explain how the evidence now supports less restrictive reaching limitations, despite two

9

additional injuries to Plaintiff's upper extremities, or how the evidence reflects improvement since the prior administrative decision to support an increased ability to perform medium work.

Notably, it appears that the ALJ relied in large part on the opinion of the State agency consultant at the initial level, Dr. Evelyn Jimenez-Medina, who completed her review in February 2020. Dr. Jimenez-Medina concluded that Plaintiff was capable of medium work. (Tr. at 169.) However, in reaching this conclusion, she made no mention of the prior administrate findings from April 2019. (See Tr. at 165-69.) She also did not include Plaintiff's degenerative disc disease in her analysis, even though that had been determined to be a severe impairment in the prior administrative decision. In contrast, the State agency consultant on reconsideration, Dr. Jeffrey Merrill, completed his review in May 2020. At that time, he noted as follows:

> At initial the [claimant's] primary severe MDI [medically determinable impairment] was found to be HTN [hypertension] which is inappropriate as the [claimant] is not shown to have any functional sequelae of his HTN [hypertension]. [Claimant's] known spinal degenerative disc disease was not noted nor were the ALJ's conclusions in the context of Albright even mentioned.
>
> The record since the 4/19 ALJ decision does not offer evidence which substantially refutes the conclusions of the ALJ at that time. The [claimant's] functional deficits with respect to his diabetes, COPD and spinal degenerative disease were all less than marked leading up to the 4/19 decision and remain so. In the absence of evidence refuting the judge's conclusions they are adopted in accordance with Albright.

(Tr. at 188.)

The ALJ's evaluation of the State agency opinions ignores Dr. Merrill's concerns regarding the omission and mischaracterization of Plaintiff's impairments at the initial level,

10

as well as Dr. Jiminez-Medina's failure to explain her significant upward departure from the previous administrative decision. (Tr. at 24-25.) In favoring Dr. Jiminez-Medina's opinion over Dr. Merrill's, the ALJ asserted that Plaintiff's "ability to perform work at the medium exertional level is well-supported by the objective evidence, including generally mild imaging studies and largely unremarkable examination findings, which do not show any problems with [Plaintiff's] gait or extremity strength." (Tr. at 24.) The ALJ further relied on Plaintiff's "sparse and conservative treatment," the lack of recommendations "for specialized care or invasive treatment modalities," and, once again, Plaintiff's "high-functioning activities of daily living," including "heavy outside work." (Tr. at 24-25.)[4]

However, this analysis does not properly consider the prior administrative decision under the case law applicable in the Fourth Circuit. Under Social Security Acquiescence Ruling 00-1(4), "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant

---

[4] Notably, in some instances, the ALJ omitted or mischaracterized evidence favorable to Plaintiff when evaluating the record. For example, the ALJ stated that Plaintiff had "full grip strength" at his January 2020 consultative examination with Dr. Stephen Burgess. (Tr. at 22-23.) In fact, Dr. Burgess noted significantly reduced grip strength in Plaintiff's right hand compared to his left and, overall, found that Plaintiff had "very pronounced issues with the hands." (Tr. at 900-01.) Two months later, on March 3, 2020, Plaintiff presented with bilateral shoulder pain, exacerbated by abduction and rotation, with multiple tender points over his joints and a significantly reduced range of shoulder motion, which prevented him from lifting his arms above his shoulders. (Tr. at 912.) When Plaintiff subsequently fell and injured his right shoulder and thorax nine days later, x-ray imaging revealed "AC joint degenerative changes," which objectively supported his previous pain complaints and limited range of motion. (See Tr. at 914, 916.) Imaging subsequently reflected degenerative changes in the joints in his hand. (Tr. at 959, 977.) In addition, with respect to the extent of Plaintiff's treatment, as Plaintiff correctly notes, "the evidence of record is sparse due to [his] lack of insurance and reliance on free clinics and emergency room visits for most of his care." (Pl.'s Br. at 8); (see also Tr. at 41, 45, 47). In addition, the record indicates at least one referral to orthopedics for injuries to Plaintiff's right hand (Tr. at 970, 972), as well as a referral for physical therapy. Although Plaintiff did not follow-up on these referrals, much of the time period at issue was impacted by restrictions related to the COVID-19 pandemic, in addition to Plaintiff's limitations related to his lack of insurance and reliance on free clinics.

11

facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period." Interpreting Lively, SSAR 00–1(4), 2000 WL 43774, (Jan. 12, 2000). This ruling is an acknowledgement of the decision of the Fourth Circuit in Lively v. Sec. of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987), which noted that *res judicata* applies to Social Security disability cases and "prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final." The Lively decision was further clarified by the Fourth Circuit in Albright, in which the court explained:

> Rather than signaling a sea change in the law of preclusion, the result in Lively is instead best understood as a practical illustration of the substantial evidence rule. In other words, we determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence. To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight.

Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 477–78 (4th Cir.1999). The Social Security Administration issued Acquiescence Ruling 00–1(4) following the Lively and Albright decisions, promulgating the procedure an adjudicator must follow when there is a final decision by the ALJ or Appeals Council in a prior disability claim:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the

> final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

AR 00–1(4) (S.S.A. Jan. 12, 2000) (emphasis added).

In Lively, which was the genesis of this rule, the Court of Appeals for the Fourth Circuit considered a case in which the claimant had been previously determined to be limited to light work, and was denied benefits on the basis of his ability to find other work within that limitation. However, the claimant in that case applied for benefits again after turning 55, when a limitation to light work would have resulted in a finding of "disabled" under the Medical Vocational Guidelines (the Grids). The ALJ then found the claimant no longer limited to light work and again denied benefits. The Fourth Circuit described the scenario as follows:

> On October 19, 1981, the appellant, a coal miner, was denied disability insurance benefits (DIB) under the Social Security Act, because he was not disabled under the Secretary's Grid Rules, 20 C.F.R. Part 404, Subpart P, App. 2. The particular Grid Rule applied was Rule 202.10, pertaining to persons under age 55, whose exertional limitations preclude more than "light work," as defined in the Secretary's regulations, 20 C.F.R. § 404.1567(b). The Administrative Law Judge, after full evaluation of the evidence, specifically found that Mr. Lively "has the residual functional capacity for substantial gainful activity of a light nature." The Appeals Council affirmed the October, 1981 decision, and the appellant was unsuccessful in his quest for judicial review of that decision. It thus became final for all purposes.
>
> On November 3, 1981, just several weeks after the ALJ's denial of his DIB claim, Mr. Lively became 55 years of age, thus qualifying as an individual of "advanced age" under the Secretary's regulations. 20 C.F.R. § 404.1563(d). A person with appellant's educational and vocational backgrounds, of advanced age, and limited to light work is considered disabled under the Grid Rules. 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.02. When plaintiff filed a second disability benefits application (on December 14, 1983), an ALJ hearing was held, which resulted in a conclusion that plaintiff was not disabled. The ALJ, without discussion of the 1981 finding that appellant was limited to light work, found that the claimant retained the functional capacity for the performance of work activity at any exertional level on and prior to December 31, 1981. After the ALJ's decision was adopted by the Appeals Council, the appellant sought judicial review, but a United States Magistrate concluded that the evidence

13

before the ALJ on the 1983 application was sufficient to sustain his conclusion of non-disability as of December 31, 1981, the date on which appellant's insured status expired. The District Judge adopted the Magistrate's Report and Recommendation, and this appeal ensued. We reverse.

It is by now well-established that fundamental and familiar principles of *res judicata* apply in Social Security disability cases. Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H.1982). Congress has clearly provided by statute that *res judicata* prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final, 42 U.S.C. § 405(h), and the courts have readily applied *res judicata* to prevent the Secretary from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding. Gavin v. Heckler, 811 F.2d 1195, 1200 (8th Cir.1987). In the present case, it is true that the prior administrative proceeding did not result in a decision favorable to the appellant. Thus, Gavin is not strictly controlling. The statute upon which Gavin's holding rests, though, 42 U.S.C. § 405(h), gives finality to findings, as well as decisions, made in previous proceedings between the parties.

The first ALJ found, in 1981, that plaintiff was limited to light work, and the Secretary successfully defended that finding on judicial review. Some two weeks after appellant was found limited to light work, he became 55 years of age. **It is utterly inconceivable that his condition had so improved in two weeks as to enable him to perform medium work. Principles of finality and fundamental fairness drawn from § 405(h), as discussed above, indicate that the Secretary must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that the claimant was capable of performing medium work. Cf. Dotson v. Schweiker, 719 F.2d 80 (4th Cir.1983). Certainly, there was no evidence of any such miraculous improvement, and, as Gavin makes clear, 811 F.2d at 1200, such evidence, not considered in the earlier proceeding, would be needed as an independent basis to sustain a finding contrary to the final earlier finding.**

Because the appellant was limited to light work when he attained 55 years of age, he was entitled to benefits on his second application therefor. Thus, the decision of the District Court will be reversed, and the matter will be remanded for the entry of judgment in favor of the appellant.

Lively, 820 F.2d at 1391-92 (4th Cir.1987).

In the present case, the ALJ failed to follow these directives when considering the impact of Plaintiff's prior, adverse administrative decision from 2019. In that prior 2019

14

decision, the ALJ concluded that Plaintiff was limited to light work beginning from August 1, 2013 through the April 15, 2019 decision, as a result of gradually progressing degenerative disc disease, diabetes with neuropathy, and chronic respiratory insufficiency (Tr. at 130, 138.). An even earlier administrative decision dated March 20, 2014, similarly found that Plaintiff was limited to light work as a result of diabetes and degenerative disc disease of the spine for the period from March 28, 2012 through the date of the decision. Thus, two ALJs have found Plaintiff limited to light work due to diabetes and degenerative disc disease of the spine for the period March 2012 through April 2019. As in Lively, that determination would have resulted in an entitlement to benefits under the Grids once Plaintiff turned 55, and potentially in weeks and months immediately prior to his birthday. 20 C.F.R. § 404.1563(b); Medical Vocational Rule 202.02. Nevertheless, in the present decision which covers the period beginning only six months later in October 2019, and which was issued in March 2021, less than two weeks prior to Plaintiff's 55th birthday, the ALJ concluded that Plaintiff was now capable of medium work. In analyzing the prior decision, the ALJ quoted the prior 2019 RFC in full and concluded that "[t]his assessment is not persuasive, as the update record supports less restrictive limitations consistent with medium level work." (Tr. at 27.) Notably, as in Lively, the ALJ did not explain how Plaintiff's condition had so improved in six months as to enable him to perform medium work. "Principles of finality and fundamental fairness drawn from § 405(h), as discussed above, indicate that the Secretary must shoulder the burden of demonstrating that the claimant's condition had improved sufficiently to indicate that the claimant was capable of performing medium work." Lively, 820 F.2d at 1392. As in Lively, "there was no evidence of any such miraculous improvement," nor was there an explanation

15

of evidence, not considered in the earlier proceeding, as an independent basis to sustain a finding contrary to the final earlier finding. The ALJ did make reference to "updated records," but there were no new lumbar or thoracic x-rays or other images taken, and the new cervical and shoulder images continued to reflect degenerative changes. In addition, Plaintiff's activities of daily living remained the same. The 2019 decision reflected that Plaintiff could "work in the yard for short amounts of time" and could "mow the lawn for 10 to 15 minutes, and then has to lie down due to pain." (Tr. at 133.) As a result, it appears that the ALJ in the present case simply disagreed with the earlier findings, without pointing to evidence of improvement or evidence not considered in the earlier proceedings, which raises the same concerns noted by the Fourth Circuit in Lively, that Plaintiff was suddenly capable of medium work rather than light work once the limitation to light work would result in a finding of disabled under the Grids.[5] See also Albright, 174 F.3d at 478 (noting that in Lively, the Fourth Circuit "determined that the finding of a qualified and disinterested tribunal that Lively was capable of performing only light work as of a certain date was such an important and probative fact as to render the subsequent finding to the contrary unsupported by substantial evidence. To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight. Even more importantly, judicial ratification of the SSA's 'bait-and-switch' approach to resolving Lively's claim would have produced a result reasonably perceived as unjust and fundamentally unfair.") Moreover, to the extent the ALJ in the present case concluded that the prior decision was "not persuasive," the ALJ's analysis fails to follow the guidance of AR

---

[5] Further, the ALJ's analysis relied on the misstatements and omissions noted above, raising further concern.

16

Case 1:22-cv-00016-TDS-JEP   Document 16   Filed 02/21/23   Page 16 of 17

00-1(4), which provides for the consideration of myriad factors, including the length of time between the prior ruling and the present claims and whether Plaintiff's impairments were subject to change over time. Here, nothing suggests that the ALJ considered these factors or undertook the analysis required by AR 00-1(4) before rejecting the RFC set out in the prior decision.[6] In the circumstances, and for all of the reasons discussed above, the Court agrees with Plaintiff's contention that the ALJ failed to adequately explain his conclusion that Plaintiff could perform competitive work at the medium level of exertion, and therefore substantial evidence fails to support the ALJ's determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #12] should be GRANTED.

This, the 21st day of February, 2023.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] Because this issue was implicitly, but not explicitly, raised in Plaintiff's briefing, Defendant has not directly addressed Lively, Albright, or AR 00–1(4). Therefore, if Defendant believes there are additional considerations that would affect this determination, Defendant may request reconsideration of this Recommendation.

17